UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUIS TORRES,             )<br>      Plaintiff          )<br>                          )<br>    v.                    )<br>                          )<br>JEFFREY BEARD, et al.,    )<br>      Defendants.        ) | C.A. No. 08-200 Erie<br><br><br><br>District Judge McLaughlin<br>Chief Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment [Document # 19] be granted in part and denied in part.

**II.     REPORT**

    **A.      Relevant Procedural and Factual History**

On July 9, 2008, Plaintiff Luis Torres, a prisoner incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants are: Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections ("Beard"); Kevin Lantz, F-Unit Manager at SCI-Albion ("Lantz"); Rod Showers, Unit Manager at SCI-Albion ("Showers"); and Tricia Gamble, FB Unit Counselor at SCI-Albion ("Gamble").

In his *pro se* Complaint, Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by exposing him to second-hand smoke, despite their knowledge that he suffers from "chronic asthma." (Complaint at p. 2). Specifically, Plaintiff claims that, despite his numerous complaints and grievances, Defendants "continue to force [him] to be house[d] in areas full of second hand smoke where smoke hovered, in Units that smokes [sic] and in cell with cellies that smoke and in so called smoke free units that staff and inmates smoke and force the plaintiff to breath second hand smoke." (Id. at p. 5, ¶ 15). Plaintiff contends that his continued exposure to second hand smoke has exacerbated his asthma

condition. In addition, Plaintiff has raised a retaliation claim, alleging that Defendants have denied and/or delayed the administration of his asthma medication in retaliation for his filing of so many grievances/complaints regarding the second hand smoke. (Id. at pp. 4, 6; ¶¶ 7, 15). As relief for his claims, Plaintiff seeks injunctive relief and monetary damages.

Defendants have filed a motion to dismiss, or in the alternative, motion for summary judgment [Document # 19], arguing, *inter alia*, that: (i) the Eleventh Amendment bars suit against the individual Defendants in their official capacities; (ii) Plaintiff fails to allege the personal involvement of Defendant Beard; (iii) Plaintiff's exposure to second hand smoke claim fails to state a conditions of confinement claim under the Eighth Amendment; and (iv) Plaintiff's retaliation claim fails to show either that he suffered an "adverse action" or that there is a causal connection between his filing of grievances and the purported "adverse actions." Despite having been granted ample time to do so, Plaintiff has failed to file a response to Defendants' motion. This matter is now ripe for consideration.

### B.     Standards of Review
#### 1.     Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to

relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

### 2. **Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v.

3

American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion
#### 1. Official Capacity Claims

The individual Commonwealth Defendants assert that, to the extent Plaintiff is suing them in their official capacities for monetary damages, they are immune from suit under the Eleventh Amendment. This Court agrees. It is well settled that suits for damages by individuals against state governments, state agencies, or state officers acting in their official capacities are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985)(holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment); Chittister v. Dep't of Community and Economic Development, 226 F.3d 223 (3d Cir. 2000)(holding that individuals are barred from seeking

monetary damages from state governments or state agencies). See also Bey v. Pennsylvania Department of Corrections, 98 F.Supp.2d 650, 657 (E.D. Pa. 2000) wherein the court summarized well-established law, observing that:

> [t]he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit in federal court. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

Id.; see also Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir. 2002).

No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to be sued. Wilson v. Vaughn, No. 93-C.V.-6020, 1996 WL 426538, *1 n.2 (E.D.Pa. July 30, 1996)(citing, 42 Pa. Con. Stat. Ann. §8521(b)). Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. Smith v. Luciani, No. 97-3613, 1998 WL 151803, *4 (E.D.Pa. March 31, 1998), aff'd, 178 F.3d 1280 (3d Cir. 1999)(Table). Thus, any claims for monetary damages against the Commonwealth Defendants in their official capacities should be dismissed.

### 2. Defendant Beard

Defendant Beard argues that he should be dismissed from this case because Plaintiff has failed to allege his personal involvement and therefore has failed to state a claim against him. The Court disagrees.

In his Complaint, Plaintiff makes the following allegations against Defendant Beard:

> Defendant [Beard] ... is legally responsible for DOC and SCI-Albion where the incidents of this Civil Action took place. The Plaintiff wroted [sic] to Dr. Beard explaining the situation and sended [sic] him copies of grievances and requested his help to correct the situation....
>
> \*                    \*                    \*
>
> 14. The Plaintiff writes [sic] to DOC Secretary Jeffery Beard explaining to him the situation of second hand smoke at the non smoking unit and of his chronic asthma condition and requesting that he correct the

6

situation....

(Complaint at pp. 2 and 5, ¶ 14).

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).

Here, Plaintiff has not alleged that Defendant Beard was personally involved in subjecting him to second hand smoke or retaliating against him by withholding his asthma medication. Nonetheless, the Complaint does allege that Defendant Beard became "involved" after Plaintiff wrote him a letter asking for him to correct the second hand smoke problem, and Beard failed to respond. Thus, Defendant Beard was not simply asked to investigate or rule on a

7

grievance but, instead, was implored by Plaintiff to take direct action to correct the smoking situation in SCI-Albion's non-smoking unit. Yet, according to Plaintiff, Defendant Beard failed to take any action to correct the smoking situation and was, therefore, deliberately indifferent to Plaintiff's health and safety. These allegations are sufficient to state a claim upon which relief may be granted against Defendant Beard, and Defendants' motion to have Defendant Beard dismissed from this case should be denied.

### 3. Eighth Amendment Claim

Defendants argue that Plaintiff's Eighth Amendment conditions of confinement claim must be dismissed because he has failed to meet either prong of the two-part test articulated by the Supreme Court in <u>Helling v. McKinney</u>, 509 U.S. 25 (1993). (Document # 20, Defendants' Brief, at pp. 6-11). In <u>Helling</u>, the Supreme Court held that, to establish an Eighth Amendment claim based on alleged exposure to environmental tobacco smoke ("ETS"), "the prisoner must [first] show that he himself is being exposed to unreasonably high levels of ETS[, and] [s]econd, he must show that the prison officials were deliberately indifferent to the serious risk of harm." <u>Helling</u>, 509 U.S. at 35.

#### a. Objective Prong

With regard to the first, objective, prong of the <u>Helling</u> test, Defendants contend that Plaintiff has not shown that he is being exposed to unreasonably high levels of ETS. In particular, Defendants argue that "Plaintiff has only alleged in the most general terms that smoking occurs in SCI-Albion, that he has been exposed to ETS, and that this is bad for him. However, he has not even attempted to quantify the levels of ETS to which he has been alleged [sic] exposed.... Plaintiff has not provided in his complaint any information regarding when this exposure occurred, how long the exposure lasted, and the level of this exposure." (Document # 20 at pp. 7-8). Defendants then cite a number of cases wherein courts have held that, when a

8

plaintiff fails to allege that he was exposed to an unreasonably high level of ETS, dismissal of the complaint is appropriate. These cases, however, are distinguishable from the present case.

For instance, in Wilson v. Hofbauer, 113 Fed. Appx. 651 (6th Cir. 2004), the plaintiff merely alleged that the defendants did not adequately enforce a prison non-smoking policy and failed to move him to a less smoke-filled area of the prison. Id. at 652. As a result, the district court found that the plaintiff "failed to state a claim with regard to exposure to second-hand smoke because he neither alleged that the level of environmental tobacco smoke in the prison created an unreasonable risk of serious damage to his future health, nor did he show a serious medical condition necessitating a smoke-free environment." Id. at 653. In addition, the plaintiff in Wilson "did not allege that he ever complained to the named defendants or other prison officials about his shortness of breath or chest pains." Id.

Similarly, in Harrison v. Smith, 83 Fed. Appx. 630 (5th Cir. 2003), the plaintiff merely alleged that allowing other prisoners to smoke created an unhealthy environment, which the district court found to be too vague and speculative to state a claim for exposure to ETS. In Becker v. Montgomery, 43 Fed. Appx. 914 (6th Cir. 2002), the court found that the plaintiff failed to allege the dates on which he was exposed to ETS and the particular "conduct of each individual defendant that would demonstrate that the defendant acted to intentionally expose [plaintiff] to ETS." Id. at 916. Finally, in Griffin v. DeRosa, 153 Fed. Appx. 851 (3d Cir. 2005), the plaintiff merely alleged that he was exposed to ETS every time he used the "inadequately ventilated prison restrooms," over a period of 20 months. Id. at 853.

Unlike the foregoing cases, Plaintiff has alleged here that he suffers from chronic asthma, yet Defendants have forced him to share a cell with smokers, and have personally smoked in his presence on numerous occasions, thus causing his asthma condition to worsen. Moreover, Plaintiff alleges that he filed two grievances, as well as a letter to Defendant Beard, complaining about his exposure to ETS. Accordingly, this Court finds that Plaintiff has adequately alleged an objective basis for his Eighth Amendment claim of being exposed to unreasonable high levels of

ETS.

        **b.**      **Subjective Prong**

With regard to the subjective prong of the <u>Helling</u> test, Defendants note that the DOC implemented a smoking policy in 2000, the aim of which is "to provide a smoke free environment consistent with the Commonwealth of Pennsylvania Management Directive 205.19 by specifying permitted/prohibited smoking areas in each of its facilities." DOC Policy No. 1.1.7 at § V. As a result, Defendants claim that "the DOC's smoking policy conclusively establishes that the Department is well aware of the concept of ETS and is in no way indifferent to the possible hazards posed. (Document # 20, Defendants' Brief, at p. 10). In making this claim, Defendants rely on the <u>Helling</u> court's observation that "the adoption of [a] smoking policy ... will bear heavily on the inquiry into deliberate indifference." <u>Helling</u>, 503 U.S. at 36.

The <u>Helling</u> court also noted, however, that much would depend on the manner in which the policy is administered by prison authorities. In this case, Plaintiff alleges that, despite the prison's delineation of smoking and non-smoking units, the Defendants have allowed, and personally engaged in, smoking in non-smoking units. In addition, Plaintiff claims that he has been housed in smoking units despite Defendants' knowledge of his chronic asthma condition. These allegations are sufficient to meet the subjective prong of the <u>Helling</u> test. Defendants' have not presented any evidence in support of their summary judgment motion to counter Plaintiff's claim that smoking was occurring in SCI-Albion's non-smoking unit despite the implementation of a smoking policy. As a result, Defendants' motion to dismiss Plaintiff's Eighth Amendment claim and/or to grant summary judgment in their favor with regard to such claim, should be denied.

      **4.**      **Retaliation**

Retaliation for the exercise of one's constitutional rights is a separate matter, requiring a

distinct legal analysis. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials[1]; and

3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[2]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison

---

[1] To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

[2] In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Here, Plaintiff claims that the Defendants retaliated against him for filing "many complaints and grievances" by purposely smoking around him, forcing him to breath second hand smoke, and purposely denying and delaying his asthma medication. (Complaint at p. 4, ¶ 7; Plaintiff's Declaration attached to Complaint at ¶ 2).

### a. Constitutionally Protected Activity

Defendants concede that Plaintiff has met the first prong of a retaliation claim, as filing lawsuits, grievances, requests to staff, and complaints are clearly protected forms of free speech under the First Amendment.

### b. Adverse Action

To satisfy the second prong, Plaintiff must show that the alleged retaliatory acts rose to the level of adverse action. This means that Plaintiff's allegations must be sufficient to demonstrate that the adverse consequences he allegedly suffered would deter a person of ordinary firmness from engaging in constitutionally protected activity. Defendants contend that Plaintiff has failed to satisfy this prong.

In particular, Defendants argue that Plaintiff cannot show that any of the alleged retaliatory conduct rises to the level of "adverse action" because Plaintiff has not been deterred from engaging in constitutionally protected activity, as evidenced by the countless institutional grievances he continued to file, as well as the numerous documents he has filed in this case. "The

test for adverse action, however, is objective, not subjective, and whether the plaintiff was actually deterred by the defendant's retaliatory acts is not dispositive." Brooks v. Smith, 2007 WL 3275266 at * 11 (M.D.Pa. 2007)(citations omitted). Accordingly, this Court finds Plaintiff's allegations that Defendants purposely exposed him to second hand smoke knowing he is a chronic asthmatic, and purposely denied and/or delayed his asthma medication, are sufficient to establish an adverse action under the second prong of a retaliation claim.

### c. Causal Connection

To satisfy the third prong of his retaliation claim, Plaintiff must allege a causal connection between his constitutionally protected activity of filing complaints and grievances and the adverse actions he allegedly suffered at the hands of the Defendants. Plaintiff has alleged that "due to [his] many complaints, grievances about staff and the second hand smoke making his asthmatic [sic] condition worst [sic], he have [sic] being [sic] subjected to retaliation and harassment by staff and medical personnel...." (Complaint at p. 4, ¶ 7). Thus, Plaintiff has alleged, at least, a temporal proximity between the grievances he filed and Defendants' alleged adverse actions to suggest a causal link sufficient to satisfy the third prong of his retaliation claim. See Allah v. Al-Hafeez, 208 F.Supp.2d at 535.

Based on the foregoing, Plaintiff has sufficiently alleged a prima facie case of retaliation. As a result, Defendants' motion to dismiss Plaintiff's retaliation claim and/ot to have summary judgment entered in their favor with regard to such claim, should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment [Document # 19] be granted in part and denied in part, as follows:

1. Plaintiff's claims for monetary damages against the Commonwealth Defendants in their official capacities should be dismissed;

2. Defendants' motion to dismiss Plaintiff's claims against Defendant Beard should be denied;

3. Defendants' motion to dismiss Plaintiff's Eighth Amendment claim and/or to have summary judgment entered in their favor with regard to such claim, should be denied; and

4. Defendants' motion to dismiss Plaintiff's retaliation claim and/or to have summary judgment entered in their favor with regard to such claim, should be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. See e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
Chief U.S. Magistrate Judge

Dated: May 20, 2009

cc: The Honorable Sean J. McLaughlin
United States District Judge